UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL ASA HITESMAN,<br><br>Defendant. | Case No. 14-CR-00010-LHK-1<br><br>**ORDER ADDRESSING THE GOVERNMENT'S MOTIONS IN LIMINE NOS. 1 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 2, 3, 4, 5, 6 & 7 AND ORDER ADDRESSING DEFENDANT'S MOTIONS IN LIMINE NOS. 1, 2, 3 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 4, 5, 7, 8, 9, 10, 11, 12, 13 & 14**<br><br>Re: Dkt. Nos. 44, 75 |

Defendant Daniel Hitesman ("Defendant") has been charged with committing attempted bank robbery in violation of 18 U.S.C. § 2113(a).  A jury trial is set to begin on July 25, 2016, at 9:00 a.m.  This Order addresses the Government's Motions in Limine Nos. 1 (as it pertains to evidence of identity), 2, 3, 4, 5, 6, and 7, and Defendant's Motions in Limine Nos. 1, 2, 3 (as it pertains to evidence of identity), 4, 5, 7, 8, 9, 10, 11, 12, 13 & 14.  ECF No. 44 ("Def. Mot.");  ECF No. 75 ("Gov. Mot.").  Defendant's Motion in Limine No. 6, which addresses prior law enforcement interactions with Defendant, and the Government's Motion in Limine No. 1 and

Defendant's Motion in Limine No. 3, as these motions pertain to evidence of knowledge, shall be addressed separately.

## I.      PROCEDURAL HISTORY

On January 8, 2014, a federal grand jury returned a one count indictment charging Defendant with committing attempted bank robbery in violation of 18 U.S.C. § 2113(a), on or about July 23, 2013.  ECF No. 1.  Defendant made an initial appearance on January 22, 2014, and was appointed counsel on February 5, 2014.  ECF Nos. 4 & 7.  On March 4, 2015, Defendant filed a motion to suppress historical cell site information.  ECF No. 26.  The Court denied this motion on the record on March 25, 2015.  ECF No. 35.  Although the Court recognized that Defendant's motion had raised "important" issues, the Court concluded that the "motion to suppress should be denied [because] the good faith exception to the exclusionary rule applies."  *Id.* at 31, 33.

The parties initially filed motions in limine on June 3 and 4, 2015, in advance of the June 18, 2015 pretrial conference and the June 22, 2015 trial.  ECF Nos. 24, 44 & 45.  At a June 8, 2015 status hearing, however, counsel for both parties agreed "that sufficient evidence exist[ed] to question the competency of [Defendant] to stand trial."  ECF No. 50 at 1.  Thus, pursuant to the parties' stipulation, the Court vacated the June 18, 2015 pretrial conference and June 22, 2015 trial, and ordered that Defendant undergo a competency examination.  Defendant later requested simultaneous testing for his chest pain and follow-up cardiologist appointments at the Metropolitan Detention Center in Los Angeles, California.  After the competency examination and cardiology testing and treatment were completed, Defendant was returned to the Northern District of California.

At a status hearing on April 6, 2016, pursuant to the parties' stipulation, the Court found Defendant competent to stand trial.  ECF No. 72.  Accordingly, the Court scheduled a pretrial conference for June 29, 2016, and a jury trial to begin on July 25, 2016.  *Id.*

On June 15, 2016, the Government filed a new set of motions in limine in advance of the June 29, 2016 pretrial conference.  Defendant, on the other hand, renewed the motions in limine

Case No. 14-CR-00010-LHK-1
ORDER ADDRESSING THE GOVERNMENT'S MOTIONS IN LIMINE NOS. 1 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 2, 3, 4, 5, 6 & 7 AND ORDER ADDRESSING DEFENDANT'S MOTIONS IN LIMINE NOS. 1, 2, 3 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 4, 5, 7, 8, 9, 10, 11, 12, 13 & 14

United States District Court
Northern District of California

that Defendant had filed a year ago on June 4, 2015.  On June 22, 2016, each party filed their

respective oppositions to the other parties' motions in limine.  ECF No. 81 ("Def. Opp'n"); ECF

No. 87 ("Gov. Opp'n").

## II.      LEGAL STANDARD

"Motions in limine are procedural devices to obtain an early and preliminary ruling on the

admissibility of evidence." *BNSF Ry. Co. v. Quad City Testing Lab., Inc.*, 2010 WL 4337827, *1

(D. Mont. Oct. 26, 2010).  A district court's evidentiary rulings, including its rulings on motions in

limine, are "reviewed for an abuse of discretion and should not be reversed absent some

prejudice." *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997).

"To exclude evidence on a motion in limine[,] the evidence must be inadmissible on all

potential grounds." *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev.

2014) (internal quotation marks omitted).  "Unless evidence meets this high standard, evidentiary

rulings should be deferred until trial so that questions of foundation, relevancy and potential

prejudice may be resolved in proper context." *Id.*  "Denial of a motion in limine does not

necessarily mean that all evidence contemplated by the motion will be admitted to [sic] trial.

Denial merely means that without the context of trial, the court is unable to determine whether the

evidence in question should be excluded." *Id.* at 1168.

## III.     DISCUSSION

### A. Government's Motions in Limine

#### 1. Defendant's Prior Convictions

The Government's Motion in Limine No.1 seeks to introduce evidence of Defendant's

prior bank robbery convictions pursuant to Federal Rule of Evidence 404(b).  In particular, the

Government contends that "there are six prior bad acts that should be admitted under Rule 404(b):

[Defendant's] conviction on one count of bank robbery in 1992, his conviction on four counts of

bank robbery in 1993, and his conviction on one count of bank robbery in 2003."  Gov. Mot. at 2.

In addition, if Defendant chooses to testify, the Government's Motion in Limine No. 2 seeks to

Case No. 14-CR-00010-LHK-1
ORDER ADDRESSING THE GOVERNMENT'S MOTIONS IN LIMINE NOS. 1 (AS IT PERTAINS TO
EVIDENCE OF IDENTITY), 2, 3, 4, 5, 6 & 7 AND ORDER ADDRESSING DEFENDANT'S MOTIONS IN
LIMINE NOS. 1, 2, 3 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 4, 5, 7, 8, 9, 10, 11, 12, 13 & 14

United States District Court
Northern District of California

introduce evidence of Defendant's 2003 bank robbery conviction pursuant to Federal Rule of Evidence 609.  Conversely, Defendant's Motion in Limine No. 3 seeks to exclude evidence of Defendant's prior convictions under Rule 404(b), and Defendant's Motion in Limine No. 4 seeks to exclude evidence of Defendant's prior convictions under Rule 609.  In the instant Order, the Court examines these four motions in limine together.  The Court turns first to the parties' arguments regarding Rule 404(b).

### a. Rule 404(b)

Rule 404(b) states as follows:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>> (B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).  A district court "may admit evidence of prior bad acts [under Rule 404(b)] if it (1) tends to prove a material point; (2) is not too remote in time; (3) is based upon sufficient evidence; and, (4) in some cases, is similar to the offense charged."  *United States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010).  "If the evidence in question satisfies these [four] requirements, the [district] court must then apply [Federal Rule of Evidence] 403" as a separate test of the evidence's admissibility.  *United States v. Luna*, 21 F.3d 874, 878 (9th Cir. 1994).  Federal Rule of Evidence 403 allows courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

With this legal framework in mind, the Court turns to the first Rule 404(b) factor—

4

materiality.  As to materiality, the Government argues that admitting Defendant's prior bank robbery convictions would be probative of Defendant's identity.  Gov. Mot. at 2 ("[T]hese acts are relevant because they tend to prove a central point in this case: [Defendant's] identity as the individual who committed the charged offense.").

The Court disagrees.  On identity, the Ninth Circuit has held that, "[w]hen . . . other acts evidence is introduced to prove identity [under Rule 404(b)]," the "characteristics of the other crime or act must be sufficiently distinctive to warrant an inference that the person who committed the act also committed the offense at issue." *Luna*, 21 F.3d at 878–89 (alteration omitted).  "[I]f the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise." *Id.* at 879.  Thus, prior convictions have generally been found to be inadmissible where the "common features" behind these convictions and the crime at issue are "largely generic." *United States v. Mota*, 2015 WL 580816, *5 (N.D. Cal. Feb. 11, 2015).

In the instant case, the Government identifies four common features amongst Defendant's prior convictions: "[i]n each of the earlier robberies, as in [the instant robbery], [D]efendant [1] entered the bank alone; [2] did not wear a mask; [3] walked up to a bank teller and showed a demand note; and [4] told the bank teller that he had a gun, but never actually showed a gun." Gov. Mot. at 2.  As discussed, the Ninth Circuit has determined that these four features are insufficiently distinctive for purposes of Rule 404(b), and are instead generic features prevalent in many bank robberies.

In *United States v. Luna*, for instance, the prosecution attempted to introduce prior bad acts evidence by providing the following summary of factors running through a string of four robberies:

> (1) they are all take-over robberies; (2) at least one or more robbers wore white surgical gloves, which is [allegedly] very unusual; (3) a white pillow case was used to take the money; (4) one robber stayed in the lobby area and was armed with a handgun; (5) the second robber was the counter jumper who removed

5

money from multiple drawers; (6) the counter jumper grabbed the hair of the tellers in order to force them to the ground and to move them about; (7) the robbers wore long sleeve sweatshirts and sweatpants; (8) one or more of the robbers wore dark women's nylon stockings over their face; (9) the robbers wore baseball caps; (10) the robbers spoke with a Hispanic accent; (11) the robbers appeared to be between 20–30 years old; (12) a car was usually found abandoned with its engine running near the scene of the robbery; (13) the robbers used an excessive amount of profanity to intimidate and take control of the employees and customers; and (14) the robberies all occurred between 10:30 a.m. and 11:30 a.m.

21 F.3d at 879 (internal quotation marks omitted).  The Ninth Circuit, however, found the prosecution's arguments unavailing and "conclude[d] that the[se] common features . . . were largely generic."  *Id.* at 881.  As the Ninth Circuit explained, the prosecution sought to rely upon certain common components—"guns, masks, gloves, bags"—that were insufficiently distinctive for purposes of establishing identity under Rule 404(b).  *Id.*

Consistent with *Luna*, in *United States v. Perkins*, 937 F.2d 1397, 1400 (9th Cir. 1991), the Ninth Circuit rejected an attempt to introduce prior bad acts evidence where "[t]he robberies all involved a man supposedly wearing various disguises (fake moustache, beard, glasses, etc.), approaching the teller with something to carry away money, handing the teller a note or making a statement requesting money, and warning the teller not to push any buttons."  Such robberies, the *Perkins* court explained, do "not involve any peculiar, unique, or bizarre conduct so as to constitute a personal signature."  *Id.* at 1400–01 (internal quotation marks omitted).  Rather, the "points of similarity between the . . . robberies were ones which are so common to most bank robberies as to be entirely unhelpful."  *Id.* at 1401.

Finally, in *United States v. Webb*, 466 F.2d 1352, 1353 (9th Cir. 1972), the Ninth Circuit rejected the government's attempt to admit into evidence an uncharged second bank robbery.  As the Ninth Circuit noted, "[t]he [second] robbery resembled the [charged robbery] in two respects only: (1) in the [charged robbery], both robbers wore dark blue ski masks; in the second, [defendant] wore a mask, apparently of a different type; (2) in the [charged robbery], one robber used a pistol; in the second, [defendant] used a similar pistol."  *Id.*  "Neither singly nor together are these elements sufficiently distinctive to warrant an inference that [defendant] was one of the

6

1    robbers in the [charged robbery]. Many robbers use masks and guns; many guns look alike." *Id.*

2         Ninth Circuit precedent, as delineated in *Luna*, *Perkins*, and *Webb*, compels the exclusion

3    of Defendant's prior bank robbery convictions in the instant case for purposes of establishing

4    identity under Rule 404(b). First, as in *Perkins*, Defendant entered the banks alone. Second,

5    Defendant did not wear a mask, and under *Luna*, *Perkins*, and *Webb*, the decision to use or not to

6    use a mask or disguise is not necessarily sufficiently distinctive for Rule 404(b). Next, Defendant

7    provided the bank teller a demand note, another feature found in *Perkins* to be insufficiently

8    distinctive under Rule 404(b). Finally, Defendant threatened the bank teller by stating that he had

9    a gun. The mere threat or even use of force, however, is also not sufficiently distinctive for Rule

10   404(b), as determined by the Ninth Circuit in *Luna*, *Perkins*, and *Webb*.

11        As an additional point, the Court notes more generally that attempts to introduce "extrinsic

12   acts evidence [are] not looked upon with favor, and . . . [their] use must be narrowly circumscribed

13   and limited." *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985) (internal quotation

14   marks and citation omitted). As the Ninth Circuit has explained, "[o]ur reluctance to sanction the

15   use of evidence of other crimes stems from the underlying premise of our criminal justice system,

16   that the defendant must be tried for what he did, not for who he is." *Id.* The Government has cited

17   no authority to suggest that the four specific features identified here—that Defendant went into the

18   bank alone, did not wear a mask, used a demand note, and stated that he had a gun—warrant

19   admissibility under Rule 404(b) as evidence of identity.

20        The Government's reliance upon *United States v. Johnson*, 820 F.2d 1065 (9th Cir. 1987),

21   does not compel a contrary result. In *Johnson*, the robber approached the bank teller in multiple

22   robberies to ask for "the same amount of change": quarters for a $5 bill. 21 F.3d at 882 n.7 (citing

23   820 F.2d at 1069–70). Unlike the more generic features at issue in *Luna*, *Perkins*, *Webb*, and in

24   the instant case, the Ninth Circuit found a request for $5 worth of quarters to be a distinctive

25   signature. *Id.*

26        The Government also cites, without additional analysis, the Ninth Circuit's decisions in

27                                                     7

28   ORDER ADDRESSING THE GOVERNMENT'S MOTIONS IN LIMINE NOS. 1 (AS IT PERTAINS TO
     EVIDENCE OF IDENTITY), 2, 3, 4, 5, 6 & 7 AND ORDER ADDRESSING DEFENDANT'S MOTIONS IN
     LIMINE NOS. 1, 2, 3 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 4, 5, 7, 8, 9, 10, 11, 12, 13 & 14

United States District Court
Northern District of California

1 | *United States v. Rrapi*, 175 F.3d 742 (9th Cir. 1999), *United States v. Crenshaw*, 698 F.2d 1060

2 | (9th Cir. 1983), *United States v. Scheets*, 940 F.2d 670 (9th Cir. 1991) (Table), *United States v.*

3 | *Quinn*, 18 F.3d 1461 (9th Cir. 1994), and *Parker v. United States*, 400 F.2d 248 (9th Cir. 1968).

4 | As with *Johnson*, the circumstances in these cases are inapposite to the facts of the instant case.

5 |      In *Rrapi*, the burglaries at issue were committed using a unique set of devices and

6 | methods: "[t]hese burglaries involved using crowbars and climbing on the roof," with "an

7 | accomplice wait[ing] outside" and a third individual "break[ing] into [the] safe[]." *Rrapi*, 175

8 | F.3d at 750. In *Crenshaw*, the prior bank robberies were admitted where "defendant aided and

9 | abetted the bank robbery by piloting [a] getaway plane." *Crenshaw*, 698 F.2d at 1065 n.7

10 | (emphasis removed). In *Scheets*, defendant's prior bank robberies all involved "the robber

11 | limp[ing] and us[ing] a cane." *Scheets*, 940 F.2d at 670, *1. In *Quinn*, the robber used a weapon

12 | that was "specially modified" and which was "found at the home at which [defendant] was

13 | arrested." *Quinn*, 18 F.3d at 1466. Finally, in *Parker*, "[t]he method common to all the robberies

14 | was that the robber, posing as a hitch-hiker, kidnapped the 'Good Samaritan' who offered him a

15 | ride and, at gunpoint, required the hostage to drive him to and to accompany him into a bank, and,

16 | having supplied him with a pillow case, directed him to fill it with money from the tellers' cages."

17 | *Parker*, 400 F.2d at 253 (Thompson, J., concurring).

18 |      None of these unique and signature features are present in the instant case. The robber did

19 | not, in Defendant's prior bank robberies or in the instant attempted robbery, use a crowbar or

20 | climb onto the roof (*Rrapi*), did not use a getaway plane (*Crenshaw*), did not limp or use a cane

21 | (*Scheets*), did not use a specially modified weapon (*Quinn*), and did not pose as a hitchhiker and

22 | force a hostage at gunpoint to collect money from the tellers' cages into a pillow case (*Parker*).

23 | Instead, the only features uniting Defendant's prior bank robberies are generic in nature, and do

24 | not suggest a level of distinctiveness necessary for admission under Rule 404(b).

25 |      In sum, Defendant's prior convictions do not satisfy materiality, the first Rule 404(b)

26 | factor for admitting identity evidence under Rule 404(b). As such, the Court need not address the

27 |

28 | Case No. 14-CR-00010-LHK-1
ORDER ADDRESSING THE GOVERNMENT'S MOTIONS IN LIMINE NOS. 1 (AS IT PERTAINS TO
EVIDENCE OF IDENTITY), 2, 3, 4, 5, 6 & 7 AND ORDER ADDRESSING DEFENDANT'S MOTIONS IN
LIMINE NOS. 1, 2, 3 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 4, 5, 7, 8, 9, 10, 11, 12, 13 & 14

remaining three Rule 404(b) factors: whether the prior convictions are sufficiently close in time, whether the convictions are based upon sufficient evidence, and whether the convictions are similar to the offense charged. *Lozano*, 623 F.3d at 1059. The Court also need not engage in a separate Rule 403 analysis.

Accordingly, the Government's Motion in Limine No. 1 is DENIED as it pertains to evidence of identity, and Defendant's Motion in Limine No. 3 is GRANTED as it pertains to evidence of identity. The Court will rule separately on whether the use of dye packs in one of Defendant's prior bank robberies may be admitted under Rule 404(b) as evidence of knowledge.

### b. Rule 609

The parties also request guidance from the Court on whether Defendant's 2003 bank robbery conviction may be admitted into evidence pursuant to Federal Rule of Evidence 609.[1] This Rule, which addresses the use of impeachment evidence, provides as follows:

> (a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>>> (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
>>> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
>> (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.
>
> (b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>> (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
>> (2) the proponent gives an adverse party reasonable written notice of the

---

[1] At this time, the Government has not yet decided whether it intends to introduce evidence of Defendant's 1992 and 1993 bank robbery convictions. Gov. Mot. at 3 n.1.

Case No. 14-CR-00010-LHK-1
ORDER ADDRESSING THE GOVERNMENT'S MOTIONS IN LIMINE NOS. 1 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 2, 3, 4, 5, 6 & 7 AND ORDER ADDRESSING DEFENDANT'S MOTIONS IN LIMINE NOS. 1, 2, 3 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 4, 5, 7, 8, 9, 10, 11, 12, 13 & 14

United States District Court
Northern District of California

intent to use it so that the party has a fair opportunity to contest its use.
Fed. R. Evid. 609.  In interpreting Rule 609, the Ninth Circuit has "outlined five factors that a district court should consider in balancing the probative value of evidence of a defendant's prior convictions against that evidence's prejudicial effect."  *United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000).  Those factors, commonly referred to as the *Hursh* factors, are: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and [defendant's] subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of defendant's credibility."  *Id.*

The *Hursh* factors do not compel a finding in favor of either party at this time.  As to the first *Hursh* factor, the impeachment value of the prior crime, the Ninth Circuit has held that "prior convictions for robbery are probative of veracity."  *United States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir. 1995).  This factor thus weighs in the Government's favor.  The second *Hursh* factor, the time of the conviction at issue, also tips in the Government's favor.  Defendant was in prison from 2002 to 2013 for his 2003 bank robbery conviction.  The attempted bank robbery at issue occurred only a few weeks after Defendant's release from prison.

However, the third *Hursh* factor, the similarity between the past crime and the charged crime, weighs in Defendant's favor.  As the Ninth Circuit noted in *United States v. Bagley*, 772 F.2d 482, 486 (9th Cir. 1985), another case where defendant was charged with bank robbery and had prior bank robbery convictions, "where . . . the prior conviction is sufficiently similar to the crime charged, there is a substantial risk that all exculpatory evidence will be overwhelmed by a jury's fixation on the human tendency to draw a conclusion which is impermissible in law: because he did it before, he must have done it again."  Accordingly, the *Bagley* court held that introducing defendant's prior bank robbery conviction could "plant in the minds of the jury the spectre that [defendant] did it before and he did it again."  *Id.  Bagley* governs the instant case because, as in *Bagley*, there is a risk that the jury will draw improper conclusions about Defendant's character given the similarity between Defendant's prior conviction and the attempted

10

United States District Court
Northern District of California

United States District Court
Northern District of California

1    bank robbery at issue.

2        Finally, the fourth and fifth *Hursh* factors—the importance of Defendant's testimony and

3    the centrality of Defendant's credibility—will depend upon whether Defendant actually testifies.

4    The Court can not therefore determine at this time whether the fourth or fifth factors weigh in

5    favor of admissibility or exclusion.  *See, e.g.*, *United States v. Farley*, 2015 WL 6871920, *13

6    (N.D. Cal. Nov. 9, 2015) ("If [the defendant] does choose to testify, the Court cannot weigh *Hursh*

7    factors four and five until that testimony is offered."),

8        In sum, two *Hursh* factors point in the Government's favor, one *Hursh* factor weighs in

9    Defendant's favor, and it is unclear, before Defendant testifies, whether the remaining *Hursh*

10   factors weigh in the Government's favor or in Defendant's favor.  Under similar circumstances,

11   district courts have denied the parties' motions in limine as premature and have invited the parties

12   to re-raise their objections at trial.  *Id.* (denying motion in limine and stating that "the Court will

13   determine the admissibility of [d]efendant's criminal history as impeachment evidence if and

14   when it is offered at trial").  The Court shall do the same.  Both the Government's Motion in

15   Limine No. 2 and Defendant's Motion in Limine No. 4 are therefore DENIED without prejudice.

16           **2.  Reference to Punishment and Jury Nullification**

17       The Government's Motion in Limine No. 3 seeks "to preclude, as irrelevant and

18   prejudicial, any reference by the defense to [Defendant's] potential sentence during any phase of

19   the trial."  Gov. Mot. at 4.  The Government also seeks to preclude reference to statements

20   encouraging jury nullification.  Defendant does not oppose the Government's requests.  Def.

21   Opp'n at 5.  Moreover, these requests comport with Ninth Circuit precedent.  *See United States v.*

22   *Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a

23   jury to consider or be informed of the consequences of their verdict."); *United States v. Powell*,

24   955 F.2d 1206, 1213 (9th Cir. 1992) ("Our circuit's precedent indicates that [defendants] are not

25   entitled to jury nullification instructions.").  Accordingly, the Government's Motion in Limine No.

26   3 is GRANTED.

27                                    11

### 3.  Law Enforcement Personnel and Disciplinary Records

The Government's Motion in Limine No. 4 states that "[a]ny effort to question . . . a law enforcement officer regarding disciplinary matters or matters from his or her personnel file should first be raised by [D]efendant with the Court and the [G]overnment."  Gov. Mot. at 5.  Defendant does not oppose the Government's request, and does not "intend[] to admit" at trial any "law enforcement personnel or disciplinary records."  Def. Opp'n at 5.  Accordingly, the Government's Motion in Limine No. 4 is GRANTED.

### 4.  Use of Negative Inference and Burden of Proof

The Government's Motion in Limine No. 5 contends that Defendant "should not be permitted to make 'missing evidence' arguments, i.e., to argue that a particular type of evidence is required in order to convict or that the jury cannot convict without a particular type of evidence."  Gov. Mot. at 5.  The Government does not identify or describe any such "missing evidence" arguments.  Instead, the Government cites, without explanation, the following passage from *United States v. Florez*, 447 F.3d 145 (2d Cir. 2006): "The law is well established that a federal conviction may be supported by the uncorroborated testimony of even a single accomplice witness if that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt."  *Id.* at 155 (internal quotation marks omitted).

*Florez* is not relevant to the issues presented in the instant case.  First, the holding in *Florez* applies to the uncorroborated testimony of an accomplice witness.  The Government, however, does not contend that Defendant acted with the help of an accomplice.  Second, the *Florez* court addressed a sufficiency of the evidence challenge, brought by a defendant after a jury had found the defendant guilty of participating in two narcotics conspiracies.  *Id.* at 148.  That is not the procedural or substantive posture of this case.  Third, *Florez* is a Second Circuit case, and no court within the Ninth Circuit has adopted the holding in *Florez*.

Having found *Florez* to be irrelevant, the Court notes that, as a general matter, "[t]he [G]overnment must prove beyond a reasonable doubt each and every element of a charged

12

United States District Court
Northern District of California

1   offense." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).  The natural extension of this rule is that a

2   defendant may challenge whether the government has carried its burden as to each element of the

3   charged crime.  Thus, although Defendant may not argue that the Government must present a

4   particular type of evidence, Defendant may point to the Government's lack of evidence to argue

5   that the Government has failed to carry its burden.  The Government's Motion in Limine No. 5 is

6   DENIED.

7           **5.  Use of Evidence Not Produced and Defenses Without Notice**

8           The Government's Motion in Limine No. 6 seeks to preclude Defendant from presenting at

9   trial any evidence that was not produced during discovery, and the Government's Motion in

10  Limine No. 7 seeks to preclude Defendant from presenting at trial any affirmative defenses that

11  were not properly noticed.  These Motions mirror Defendant's Motions in Limine Nos. 2 and 10,

12  which seek to exclude at trial evidence not previously disclosed; and Defendant's Motion in

13  Limine No. 9, which seeks to exclude at trial exhibits not on the Government's exhibit list.

14          In response to the Government's motions, Defendant acknowledges that it has a continuing

15  obligation to produce discoverable material and to provide notice of any affirmative defenses, and

16  that Defendant "has nothing to notice at this time."  Def. Opp'n at 6.   Likewise, the Government

17  does not oppose Defendant's requests to exclude exhibits and evidence not previously disclosed.

18  Gov. Opp'n at 2, 5.  Given the parties' positions, the Government's Motions in Limine Nos. 6 and

19  7 are GRANTED.  Defendant's Motions in Limine Nos. 2, 9, and 10 are also GRANTED.

20      **B.  Defendant's Motions in Limine**

21          **1.  Cell Site Location Data**

22          Defendant's Motion in Limine No. 1 seeks to preclude FBI Officer Hector Luna ("Luna")

23  from using Defendant's "cell site location data to offer [expert] testimony/opinions regarding"

24  Defendant's geographic location via a "granulization" or a "fanning" theory.  Def. Mot. at 4.

25          The Government does not intend to introduce granulization theory testimony and does not

26  intend to offer testimony regarding Defendant's exact location based on Defendant's cell site data.

27                                                          13

28

United States District Court
Northern District of California

1    Thus, Defendant's request that Luna be precluded from relying on granulization theory to identify

2    Defendant's exact geographic location is GRANTED.

3            However, the Government does intend to introduce evidence regarding a fanning theory.

4    Under a fanning theory, a cell tower's direction and range—as depicted on a map by a shaded fan

5    that emanates from a particular cell tower, ECF No. 44-1 at 19—may be used to predict an

6    individual's *general* geographic location.  The Government intends to offer Luna's expert

7    testimony to predict, under a fanning theory, the general location of Defendant's cell phone on the

8    date of the robbery at issue.  Gov. Opp'n at 2.  Defendant requests that Luna be precluded from

9    offering any such testimony.

10           Federal Rule of Evidence 702 allows an expert witness to offer testimony in the form of an

11   opinion or otherwise as long as:

12           (a) the expert's scientific, technical, or other specialized knowledge will help the trier of
             fact to understand the evidence or to determine a fact in issue;
13           (b) the testimony is based on sufficient facts or data;
             (c) the testimony is the product of reliable principles and methods; and
14           (d) the expert has reliably applied the principles and methods to the facts of the case.

15   Fed. R. Evid. 702.

16           In applying Rule 702, district courts within the Northern District of California have

17   "consistently" found that "[h]istorical cell site evidence" is "admissible," so long as the evidence

18   is offered to establish an individual's "general geographic location."  *United States v. Johnson*,

19   2015 WL 5012949, *6 (N.D. Cal. Aug. 24, 2015); *see also Jimenez v. Walker*, 2012 WL 4051124,

20   *18 (N.D. Cal. Sept. 13, 2012) (upholding decision to allow testimony regarding general cell

21   phone location); *United States v. Martinez*, 2015 WL 428314, *1 (N.D. Cal. Jan. 30, 2015)

22   (allowing testimony regarding the general location "of a cellular telephone based on information

23   contained in call detail records, based on the cellsite location accessed for a particular call.").

24           In response to *Johnson*, *Jimenez*, and *Martinez*, Defendant acknowledges that cell site

25   location data may be used to "suggest that a person was within a range of miles of certain cell site

United States District Court
Northern District of California

14

towers." Def. Mot. at 4.  Moreover, Defendant does not specifically describe how Luna's testimony about Defendant's general location, based upon a fanning theory, would fail to comport with Rule 702.  Instead, Defendant relies upon statements made in a declaration of James Norris ("Norris"), a potential defense expert witness with "extensive experience and knowledge in the area of cell site location technology." ECF No. 44-1 at 1.  According to Norris, "cell towers do not have the same dimensioned fan shape range emanating from them as set forth in the [Government's demonstrative.]" Def. Mot. at 6.  The "[r]ange of a cell tower will differ based upon several factors such as the terrain surrounding the tower, the height of the antennae, and the tilt of the towers." *Id.*  Additionally, "there are areas and pockets [within a cell tower's range] where, for many reasons, a cell tower is cut off and cannot and will not connect to a cell phone." *Id.*

Defendant's contentions have been considered and rejected by a number of courts.  In *United States v. Jones*, 918 F. Supp. 2d 1, 4 (D.D.C. 2013), for instance, defendant "assert[ed] that each particular [cell tower] antenna has a unique beamwidth, downward tilt, and angle, such that the specific coverage area for any given antenna cannot be determined."  Given such circumstances, defendant in *Jones* argued that testimony premised on a fanning theory should be excluded.

The *Jones* court found this argument unpersuasive.  Relying upon case law from the Second, Fifth, and Seventh Circuits, the *Jones* court concluded that "opinions regarding the location and placement of each cell tower sector to which the witnesses' phones connected were based on sufficient facts and data and [we]re based on a reliable methodology." *Id.* at 5.  Such opinions could help determine an individual's *general* geographic location, even if these opinions could not identify an individual's *exact* geographic location.

Moreover, any testimony on the "assumptions about the strength of the signal from a given cell tower" go to the "weight of [the agent's] testimony, not its reliability." *Id.*  Consequently, "numerous" courts—including the *Jones* court—"have concluded that the mere existence of

15

1    factors affecting cell signal strength that the expert may not have taken into account goes to the

2    weight of the expert's testimony and is properly the subject of cross-examination, but does not

3    render the fundamental methodology of cell site analysis unreliable." *Id.*

4         The *Jones* decision is in accord with the holdings of a number of other courts. *See United*

5    *States v. Banks*, 93 F. Supp. 3d 1237, 1254–55 (D. Kan. 2015) (acknowledging that cell site data

6    may be unable "to pinpoint precisely the location of a phone," but upholding admission of

7    testimony regarding cell phone's general location); *United States v. Reynolds*, 626 F. App'x 610,

8    617–18 (6th Cir. 2015) (determining that expert testimony could be offered to help narrow an

9    individual's general geographic area). Indeed, Defendant has not identified any case law that has

10   reached a contrary result from *Jones*, and the Court has found none in its own research. Thus,

11   exclusion of Luna's testimony is unwarranted. *Pyramid Technologies, Inc. v. Hartford Cas. Ins.*

12   *Co.*, 752 F.3d 807, 813 (9th Cir. 2014) ("Shaky but admissible evidence is to be attacked by cross

13   examination, contrary evidence, and attention to the burden of proof, not exclusion."). Defendant

14   may, if Defendant wishes, attack Luna's conclusions by challenging Luna on cross-examination or

15   by calling Norris, Defendant's expert, to the stand at trial.

16        Defendant's Motion in Limine No. 1 to exclude testimony regarding Defendant's general

17   geographic location based on a fanning theory is therefore DENIED. Defendant's Motion in

18   Limine No. 1 to exclude testimony regarding Defendant's exact geographic location based on a

19   granulization theory is GRANTED.

20        **2. Defendant's BOP Supervision**

21        Defendant "was under BOP [Bureau of Prisons] supervision at the time of the attempted

22   bank robbery and supervised release short[ly] thereafter." Def. Mot. at 14. Defendant argues that

23   these facts have little probative value, but could result in unfair prejudice to Defendant.

24   Consequently, Defendant's Motion in Limine No. 5 seeks "to exclude any mention that

25   [Defendant] was on supervision at the time of the incident." *Id.*

26        The Government "has no objection to excluding explicit references to BOP supervision or

27                                                       16

28   Case No. 14-CR-00010-LHK-1
     ORDER ADDRESSING THE GOVERNMENT'S MOTIONS IN LIMINE NOS. 1 (AS IT PERTAINS TO
     EVIDENCE OF IDENTITY), 2, 3, 4, 5, 6 & 7 AND ORDER ADDRESSING DEFENDANT'S MOTIONS IN
     LIMINE NOS. 1, 2, 3 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 4, 5, 7, 8, 9, 10, 11, 12, 13 & 14

United States District Court
Northern District of California

1   supervised release," but contends that "different, sanitized terms" should be allowed to describe

2   Defendant's living circumstances at the time of the robbery.  Gov. Opp'n at 4.  As the

3   Government points out, "it is important for the jury to know that [Defendant] was living in a

4   residence where he was required to sign in and out, maintain constant accountability of his

5   whereabouts, and report truthfully and accurately or face potential repercussions."  *Id.*

6          Under Rule 403, the Court must determine if the probative value of relevant evidence "is

7   substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

8   the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

9   evidence."  Fed. R. Evid. 403.  The Court recognizes that there is probative value in establishing

10  that Defendant was in a residential program.  Defendant's participation in such a program would,

11  for instance, help explain Defendant's whereabouts at specific times on the date of the robbery.

12  Moreover, as discussed below in regards to Defendant's Motions in Limine Nos. 7 and 8,

13  Defendant's participation in a residential program establishes the foundation necessary for some

14  witnesses—such as Daionne Washington, the program's director—to identify Defendant based

15  upon photographs taken from the robbery.

16         On the other hand, the Court also recognizes the possibility of unfair prejudice if

17  references are made to Defendant being under BOP supervision or on supervised release.  As

18  courts have noted, "evidence of [an individual's] supervised release status may be unfairly

19  prejudicial," *United States v. Rodgers*, 2009 WL 3498801, *1 (W.D. Mich. Oct. 26, 2009), and

20  could be a back door to introduce evidence otherwise found to be inadmissible under Rule 404(b),

21  *United States v. Manarite*, 44 F.3d 1407, 1418–19 (9th Cir. 1995).

22         Under these circumstances, the Court finds instructive the Ninth Circuit's decision in

23  *United States v. Neill*, 166 F.3d 943 (9th Cir. 1999).  In *Neill*, the district court allowed "witnesses

24  and counsel to refer to the fact that [defendant] was on work release at the time of the [charged]

25  bank robberies."  *Id.* at 946.  The Ninth Circuit determined that this decision was in error.  As the

26  Ninth Circuit explained, there are "risks associated with allowing into evidence the fact that the

United States District Court
Northern District of California

17

1  defendant was on parole or in a halfway house." *Id.*; *see also id.* (citing cases).  Although the

2  Ninth Circuit acknowledged the potential probative value of defendant's living circumstances, the

3  court explained that the risk of prejudice "should at least have been minimized by calling the

4  Work Release Center a 'Residential Program.'" *Id.*

5  Consistent with *Neill*, various district courts within the Ninth Circuit have allowed

6  probative evidence to be admitted so long as any reference to an individual's supervised release

7  status is redacted.  *See, e.g.*, *United States v. Brugnara*, 2015 WL 1907513, *7 (N.D. Cal. Apr. 23,

8  2015) (allowing introduction of a financial statement where defendant's status was redacted).  In

9  accord with *Neill* and *Brugnara*, the parties at trial shall make no references to Defendant's status

10  on BOP supervision or supervised release.  Instead, any references to Defendant's living

11  circumstances at the time of the robbery must be to Defendant's residence at a "residential

12  program."  Accordingly, Defendant's Motion in Limine No. 5 is GRANTED.

13      **3. Testimony of Daionne Washington**

14  Daionne Washington ("Washington") serves as the facility director of GEO Reentry

15  Services, the reentry program where Defendant resided at the time of the attempted bank robbery

16  at issue.  Defendant's Motion in Limine No. 7 requests that the Government establish sufficient

17  foundation before allowing Washington to testify to the fact that Defendant left GEO Reentry

18  Services to work in San Jose on the date of the robbery at issue.  This request comports with

19  Federal Rule of Evidence 602, which states that "[a] witness may testify to a matter only if

20  evidence is introduced sufficient to support a finding that the witness has personal knowledge of

21  the matter."  Fed. R. Evid. 602.  The Government does not object to Defendant's Motion in

22  Limine No. 7, and acknowledges that it must establish sufficient foundation for Washington's

23  testimony.  Accordingly, Defendant's Motion in Limine No. 7 is GRANTED.

24  Next, Defendant's Motion in Limine No. 8 seeks to exclude testimony by Washington

25  identifying Defendant as the attempted bank robber.  According to Defendant, "investigators

26  presented Ms. Washington with still photos taken from the bank where the robbery was attempted

27

28

Case No. 14-CR-00010-LHK-1
ORDER ADDRESSING THE GOVERNMENT'S MOTIONS IN LIMINE NOS. 1 (AS IT PERTAINS TO
EVIDENCE OF IDENTITY), 2, 3, 4, 5, 6 & 7 AND ORDER ADDRESSING DEFENDANT'S MOTIONS IN
LIMINE NOS. 1, 2, 3 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 4, 5, 7, 8, 9, 10, 11, 12, 13 & 14

*United States District Court*
*Northern District of California*

and asked her to affirm that the individual in the photograph was Mr. Hitesman." Def. Mot. at 17.

"This evidence," Defendant argues, "should be excluded from trial" because Washington "was not

a witness to the attempted bank robbery." *Id.*

Defendant's argument is not well taken. In the Ninth Circuit, "a lay witness may give an

opinion regarding the identity of a person depicted in a photograph [so long as] that witness has

had sufficient contact with the defendant to achieve a level of familiarity that renders the lay

opinion helpful [to the jury]." *United States v. Beck*, 418 F.3d 1008, 1014 (9th Cir. 2005) (internal

quotation marks omitted). Although the Ninth Circuit has "not provided clear guidance as to the

extent of contact sufficient to render lay opinion testimony rationally based and helpful to the

jury," *id.*, the court did, in *Beck*, discuss several examples where the Ninth Circuit had previously

upheld identification testimony by a lay witness, *see id.* n.4.

In *United States v. Henderson*, 241 F.3d 638, 650–51 (9th Cir. 2000), for instance, the

Ninth Circuit "held that there was no abuse of discretion when a lay witness testified to the

defendant's identity in surveillance photographs and had known the defendant for more than four

years, and had seen him more than 100 times." *Beck*, 418 F.3d at 1014 n.4 (summarizing

*Henderson*). Likewise, in *United States v. Holmes*, 229 F.3d 782, 788–89 (9th Cir. 2000), the

court "held that there was no abuse of discretion where a lay witness had met the defendant six

times for at least thirty minutes each time." *Beck*, 418 F.3d at 1014 n.4 (summarizing *Holmes*).

Finally, in *United States v. Butcher*, 557 F.2d 666, 670 (9th Cir. 1977), the Ninth Circuit held

"admissible the lay opinion identification testimony of two police officers and a probation officer

who identified the defendant as the culprit depicted in bank surveillance photographs." *Beck*, 418

F.3d at 1014 n.4 (summarizing *Butcher*). "The witnesses had varying levels of prior contacts with

the defendant: the first officer had known the defendant for one and a half years and had met the

defendant about three times for a total of two and a half hours; the second officer had known the

defendant for five months and had observed the defendant for between two and three hours; the

probation officer had known the defendant for just over one year, and had met the defendant about

United States District Court
Northern District of California

United States District Court
Northern District of California

1    twelve times with each meeting lasting between fifteen and thirty minutes." *Id.*

2        After examining the reasoning in *Henderson*, *Holmes*, and *Butcher*, the *Beck* court went on

3    to uphold the district court's decision to permit identification testimony by a witness who had met

4    a defendant "four times in a two-month period, for a total of more than seventy minutes." *Id.* at

5    1015.  As the *Beck* court noted, this witness "had sufficient contacts with [defendant] so that [the

6    witness's] perception of the person in the bank surveillance photo was helpful to a clear

7    understanding of . . . the identity of the person in the bank surveillance photo." *Id.*

8        Washington's identification of Defendant falls within the purview of the legal authority

9    discussed in *Beck*.  As the Government notes, Defendant resided at the GEO Reentry Services

10   facility for several months.  Gov. Opp'n at 5.  As the facility director for GEO Reentry Services,

11   Washington had ample opportunity to familiarize herself with Defendant's appearance.

12   Washington's familiarity with Defendant's physical appearance would "render[]" her "opinion

13   helpful" to the jury.  *Beck*, 418 F.3d at 1014.  Defendant's Motion in Limine No. 8 to exclude

14   Washington's identification testimony is therefore DENIED.

15       **4.  Presenting Indictment to Jury**

16       Next, Defendant's Motion in Limine No. 11 seeks to prevent the Government from

17   showing the indictment to the jury.  The Government does not oppose this request.  Gov. Opp'n at

18   5.  Accordingly, Defendant's Motion in Limine No. 11 is GRANTED.

19       **5.  Dress in Civilian Clothes / Access to Personal Grooming Items**

20       Defendant's Motion in Limine No. 12 requests that Defendant be permitted to attend trial

21   in civilian clothes and to have access to tools for personal grooming.  The Government does not

22   oppose this motion.  Gov. Opp'n at 6.  Accordingly, Defendant's Motion in Limine No. 12 is

23   GRANTED.

24       **6.  Witness Exclusion Order**

25       Defendant's Motion in Limine No. 13 seeks to exclude all witnesses from the courtroom

26   when they are not testifying.  In response, the Government requests only that Joseph Hyun

27                                                20

28   Case No. 14-CR-00010-LHK-1
     ORDER ADDRESSING THE GOVERNMENT'S MOTIONS IN LIMINE NOS. 1 (AS IT PERTAINS TO
     EVIDENCE OF IDENTITY), 2, 3, 4, 5, 6 & 7 AND ORDER ADDRESSING DEFENDANT'S MOTIONS IN
     LIMINE NOS. 1, 2, 3 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 4, 5, 7, 8, 9, 10, 11, 12, 13 & 14

1   ("Hyun"), a special agent with the Federal Bureau of Investigation who was assigned to this case

2   and who may testify at trial, be allowed to remain at the Government's counsel table for the

3   duration of the trial.  The Government does not otherwise oppose Defendant's request.  Gov. Mot.

4   at 6.

5          Defendant's Motion in Limine No. 13 implicates Federal Rule of Evidence 615, which

6   provides as follows:

7          At a party's request, the court must order witnesses excluded so that they cannot hear other
           witnesses' testimony. Or the court may do so on its own. But this rule does not authorize
8          excluding:
           (a) a party who is a natural person;
9          (b) an officer or employee of a party that is not a natural person, after being designated as
           the party's representative by its attorney;
10         (c) a person whose presence a party shows to be essential to presenting the party's claim or
           defense; or
11         (d) a person authorized by statute to be present.

12  Fed. R. Evid. 615.  In interpreting Rule 615, the Ninth Circuit has held that case agents like Hyun

13  may remain in the courtroom pursuant to either Rule 615(b) or Rule 615(c).  *See United States v.*

14  *Gonzalez*, 221 F.3d 1349, *1 (9th Cir. 2000) (Table) ("DEA Special Agent Hinton, INS Special

15  Agent Nygaard, and Idaho Bureau of Narcotics Special Agent White were all case agents for the

16  Government and were therefore exempted from exclusion under Federal Rule of Evidence 615[b].

17  Moreover, Agents Hinton, Nygaard and White were all deemed by the district court to be essential

18  to the presentation of the Government's case and were therefore also exempt from exclusion under

19  Federal Rule of Evidence 615[c].") (footnote omitted).  Consistent with *Gonzalez*, the Court finds

20  that, other than Hyun, all witnesses shall be excluded from the courtroom when they are not

21  testifying.  Defendant's Motion in Limine No. 13 is thus GRANTED in part and DENIED in part.

22         **7.  Informing Witnesses of Pretrial Rulings**

23         Finally, Defendant requests that the Government inform its witnesses of the Court's

24  pretrial rulings, and to confirm that the Government has done so.  The Government does not

25  oppose this request.  Gov. Opp'n at 6.  Accordingly, Defendant's Motion in Limine No. 14 is

26  GRANTED.

27
                                                       21

IV.    **CONCLUSION**

To summarize, the Court rules on the parties' motions in limine as follows:

1.  The Government's Motions in Limine Nos. 3, 4, 6, and 7 are GRANTED.

2.  The Government's Motions in Limine Nos. 1 (as it pertains to evidence of identity), 2, and 5 are DENIED.

3.  Defendant's Motions in Limine Nos. 2, 3 (as it pertains to evidence of identity), 5, 7, 9, 10, 11, 12, and 14 are GRANTED.

4.  Defendant's Motions in Limine Nos. 1 and 13 are GRANTED in part and DENIED in part.

5.  Defendant's Motions in Limine Nos. 4 and 8 are DENIED.

Defendant's Motion in Limine No. 6, which addresses prior law enforcement interactions with Defendant, and the Government's Motion in Limine No. 1 and Defendant's Motion in Limine No. 3, as these motions pertain to evidence of knowledge, shall be addressed separately.

**IT IS SO ORDERED.**

Dated:  June 28, 2016

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

Case No. 14-CR-00010-LHK-1
ORDER ADDRESSING THE GOVERNMENT'S MOTIONS IN LIMINE NOS. 1 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 2, 3, 4, 5, 6 & 7 AND ORDER ADDRESSING DEFENDANT'S MOTIONS IN LIMINE NOS. 1, 2, 3 (AS IT PERTAINS TO EVIDENCE OF IDENTITY), 4, 5, 7, 8, 9, 10, 11, 12, 13 & 14